Estate of Martha A. Allison, Deceased, The Union National Bank of Pittsburgh, Executor v. Commissioner.
Estate of Martha A. Allison v. Commissioner
Docket No. 7725.
United States Tax Court
1946 Tax Ct. Memo LEXIS 31; 5 T.C.M. (CCH) 992; T.C.M. (RIA) 46273; November 25, 1946
*31 1. Payments made by petitioner, as executor, to a bank and to decedent's daughter and son-in-law in satisfaction of notes held by the bank and signed by the daughter, and of interest paid by the daughter and her husband on such notes, which evidenced the loan of funds borrowed and used for the support of the decedent, held to be proper deductions from the gross estate as valid claims against the estate. 2. A real estate fee of $250, paid by petitioner, as executor, on the sale of a piece of rental property of the estate, disposed of during administration to avoid the necessity of expending estate funds in repairs, held deductible as an expense of administration. 3. The fair market value at decedent's death of certain bank stock determined. Lee W. Eckels, Esq., 2812 Grant Bldg., Pittsburgh, Pa. for the petitioner. J. O. Kramer, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined a deficiency in estate tax in the amount of $4,075.81. Certain of the facts were stipulated and additional facts were established by testimony and exhibits introduced at the hearing. We find the facts as stipulated and *32 such additional facts as are hereinafter set forth are found upon the evidence. The issues are: (a) whether brokerage fee paid for the sale of real estate constitutes expense of administration; (b) the fair market value of certain stock; and (c) whether payments made by decedent's estate, in the sum of $8,091.38, are deductible from the gross estate as claims against the estate. Findings of Fact The Union National Bank of Pittsburgh (hereinafter referred to as "petitioner") is the duly qualified executor and trustee of the estate of Martha A. Allison, deceased. On December 26, 1943, decedent died testate, a resident of Wilkinsburg, Allegheny County, Pennsylvania. The estate tax return was filed on behalf of the decedent with the collector of internal revenue for the 23rd district of Pennsylvania at Pittsburgh, Pennsylvania. In such return credit was claimed for the amount of $250, representing commission paid to a real estate broker. The amount of $8,091.38 was also claimed as representing debts of decedent. The respondent disallowed the deduction of the $250 item on the ground it did not represent an expense of administration. The items totaling $8,091.38 were disallowed as not *33 representing proper claims against the estate. The aggregate amount of $8,091.38 represents five separate items, described by petitioner in its account as executor in the following manner: February 21, 1944, The Wilkinsburg
Bank, payment of the following
notes, representing moneys loaned by
it on behalf of the decedent -
90-Day Promissory Note, 11/22/43
$ 500.00
90-Day Promissory Note, 11/22/43
786.08
90-Day Promissory Note, 11/22/43
3,500.00
July 15, 1944, reimbursement of inter-
est paid on notes to The Wilkinsburg
Bank representing moneys loaned by
it on behalf of the decedent -
Anna A. McMillin
2,147.20
Edwin R. McMillin
1,158.10
Anna A. McMillin is the daughter of decedent and the wife of Edwin R. McMillin. Decedent was a woman of substantial means. Her residence consisted of 12 rooms and she employed five servants. Decedent's daughter, with her family, resided a short distance from her mother. Late in 1926, at the decedent's request, the daughter, with her husband and child, moved into the decedent's residence for the purpose of caring for her mother and managing the home. During all the period involved the decedent was diabetic. She was a *34 nervous and erratic individual and association with her, without friction, was difficult. In 1927, decedent suffered a broken kneecap and was hospitalized. Under a power of attorney the daughter made various withdrawals from decedent's account at the Wilkinsburg Bank. These withdrawals, aggregating $2,390.66, were for expenditures made in connection with the maintenance of decedent's home and her personal care. For the purpose of securing funds necessary for the maintenance of the decedent's home and her personal care, the daughter obtained loans, aggregating $3,500, from the Wilkinsburg Bank on her notes. Early in 1930, the decedent had some disagreement with her daughter respecting the aforementioned bank withdrawals. She notified the Wilkinsburg Bank that she disapproved of various withdrawals aggregating $2,390.66. Decedent advised the bank that she would withdraw her deposit, then in excess of $200,000, unless that amount was restored to her account. This threat alarmed the bank's directorate and a meeting was called to discuss the situation. At this meeting, Mr. Bostwick, a personal attorney of decedent and a director of the bank, advised the board that he had talked with decedent *35 during her illness and that the indebtedness in question was hers and not that of the daughter. In the belief that decedent would shortly acknowledge the indebtedness and discharge it, it was decided that the bank should request Mrs. McMillin to give her personal note for such amount, which would permit the bank to restore such amount to decedent's account. Against the objection of director Bostwick, the daughter was requested to give her promissory note as a temporary expedient. Thereupon Mrs. McMillin, in order to permit the bank to carry out the plan of appeasing decedent, executed her note in the amount of $2,426.51. This amount covers the $2,390.66, contested withdrawals, and prepaid interest of $35.85 on the 90-day note. The amount of this note had been reduced by payments to the amount of $786.08. On November 22, 1943, the daughter executed a new 90-day note for such balance. On the same date she executed a 90-day note for $500, representing unpaid interest on the $3,500 and the $2,426.51 notes. Prior to 1935 decedent's daughter had secured a personal loan, secured by collateral of decedent, from two sources other than the Wilkinsburg Bank. In June of that year, decedent *36 directed the Wilkinsburg Bank to acquire the loans, liquidate the collateral, and apply any balance after payment of the loans to the daughter's loans with Wilkinsburg Bank. The sum of $1,350.46, realized from the sale of the collateral in excess of the amounts necessary to discharge the two said indebtednesses, was so applied by the Wilkinsburg Bank. From time to time decedent's daughter and her husband paid interest to the bank on the unpaid balance of such note, which payments at the time of decedent's death totaled $2,147.20 made by the daughter, and $1,158.10, paid by her husband. In May or early June 1942, Roy G. Bostwick, a director and at this time vice-president of the Wilkinsburg Bank, was retained by decedent to prepare her will. Bostwick had long been a family friend. In discussing her affairs with the decedent, in connection with the preparation of her will, Bostwick called her attention to the unpaid notes of her daughter at the Wilkinsburg Bank and urged decedent to pay them as expenditures made for her account. At this time the decedent admitted to Bostwick that such indebtedness was, in fact, hers. However, decedent died in December 1943 without having paid the notes *37 in question. The $250 disbursement is the commission paid a real estate broker in connection with the sale of certain of decedent's real property. After petitioner's qualification as executor and trustee of decedent's estate, one of petitioner's trust officers and an appraiser viewed the premises located at 617 Hampton Avenue, Wilkinsburg, belonging to decedent's estate. It was ascertained that the premises were in need of substantial repairs. Petitioner, having express authority as executor to dispose of real property, determined that it was in the best interest of the estate to sell the property rather than to invest the necessary funds to put it in good repair. On September 1, 1944, the petitioner, through its counsel, Roy G. Bostwick, filed in the Orphans' Court of Allegheny County, Pennsylvania, the first and final account as executor of decedent's estate. In that account credit was claimed for the $250, real estate commission, and the here contested debts aggregating $8,091.38, hereinbefore described in detail. In this accounting proceeding, J. Weinman Cratty, Esq., an attorney of Pittsburgh, Pennsylvania, was appointed guardian ad litem of the minor remaindermen, and trustee *38 ad litem for unborn persons who might have interests in posse in the estate of decedent. Cratty duly qualified, examined the account and made his verified report to the Probate Court. In that report, inter alia, he states: * * * That he has * * * investigated the various items of credit therein taken and the various charges and amounts paid out thereunder, and believes them to be correct and proper credits and that the account as filed is correct in form and substance. In the couse of Cratty's investigation of the items in the executor's account, he was informed by Bostwick of the origin and nature of the claims of the Wilkinsburg Bank, and of the decedent's daughter and her husband. Information respecting these items was given by Bostwick to the Judge of the Orphans' Court previous to their allowance. The executor's final account was settled and approved by the Orphans' Court. Among the assets in decedent's estate were 99 shares of the common stock of the Wilkinsburg Bank. Petitioner, for estate tax purposes, fixed the per share value at $45. The respondent increased the value to $100 per share. The stock of the Wilkinsburg Bank was closely held and unlisted. There were outstanding *39 3,299 1/2 shares of common of the par value of $20 per share and 2,108 shares of preferred of the par value of $100. The bank had suffered large reverses during the depression years. It had paid no dividends on the common for some years. The book value of the common shares was $188 per share. There were no sales at or near the decedent's death in December 1943. The record discloses the sale of 10 shares in 1938 at $15 per share. In June 1944, 20 shares were offered by another bank to the cashier of the Wilkinsburg Bank, who offered $25 a share but did not acquire them. The fair market value of the 99 shares of the common stock of the Wilkinsburg Bank, on the day of decedent's death, December 26, 1943, was $45 per share. Opinion One of the contested issues relates to the fair market value of the 99 shares of the common stock of the Wilkinsburg Bank owned by decedent at the time of her death on December 26, 1943. We have set forth the evidentiary facts in our findings of fact. Upon consideration of all the factors bearing the value of unlisted shares, where no sales have taken place at or approximately near the critical date, we conclude the fair market value of the shares in question *40 was $45 per share and have so found as a fact. The claimed deduction of items, aggregating $8,091.38, as debts of decedent, and the sum of $250, claimed as an administration expense, has been disallowed by the respondent in determining decedent's net estate for tax purposes. After considering the whole record, we are convinced petitioner has established that the payments aggregating $8,091.38 were made in discharge of decedent's lawful obligations. During her lifetime, the decedent admitted the indebtedness to be hers. The guardian ad litem representing infant remaindermen determined the claims were lawful obligations of the decedent, and made no objection to their payment. The executor's account showing the payments to have been made was duly approved by the Orphans' Court. The respondent urges that the claims were barred by the statute of limitations. We think it is unnecessary to pass upon that contention. The statute of limitations is one of repose. It does not affect the validity of a claim, but only its enforcement. The interested parties, to whom, alone, such defense is available, did not raise it. Likewise, the view we have taken makes it unnecessary to pass upon the petitioner's *41 contention that the decree of the Orphans' Court affirming the payment is binding upon us. We, therefore, conclude the respondent erred in disallowing such debts as deductions in determining decedent's net estate. The payment of $250, real estate broker's commission, was likewise erroneously disallowed because decedent's will specifically empowered the executor to sell the real estate. Certain adjustments made by the respondent are not in dispute; therefore Decision will be entered under Rule 50.