153 F.Supp. 674 (1957)
ESTATE of Clara B. BARTLETT, Deceased.
George S. BROWN and Provident Trust Company, Plaintiffs,
v.
Francis R. SMITH, Defendant.
Civ. A. 17521.
United States District Court E. D. Pennsylvania.
July 30, 1957.
*675 Robt. W. Greenfield, Philadelphia, Pa., for plaintiff.
W. Wilson White, U. S. Atty., Philadelphia, Pa., James X. Kilbridge, James P. Garland, Robert H. Showen, Attys., Dept. of Justice, Washington, D. C., for defendant.
KRAFT, District Judge.
The questions presented for decision under the stipulated facts of this case are whether the Commissioner of Internal Revenue, in applying the pertinent provisions of the Internal Revenue Code of 1939 and of the Treasury Regulations, erred in disallowing the estate's deductions from the gross estate of (a) charitable bequests[1] and (b) expenses incurred in the sale of real estate.[2]
Plaintiffs are executors of the Estate of Clara B. Bartlett, deceased, a Pennsylvania resident, who died January 16, 1948. Their estate tax return reported no tax due. The Commissioner assessed a deficiency of $4,257.27 which plaintiffs paid on April 24, 1952. Interest of $771.91 on the deficiency was paid May 16, 1952. Upon denial of their timely claim for refund plaintiffs brought this suit.
After several minor bequests, the decedent's will, by its seventh section, bequeathed and devised the entire residuary estate in trust to pay the net income therefrom to Rosa Stockberger for life, to invade the trust principal for her benefit upon certain conditions and, on her death, to distribute the then trust principal among four admitted charities. The value of the residuary trust estate was $85,441. Paragraph (b) of the seventh section of decedent's will provided:
"(b) I authorize my said Trustees to apply said net income for the maintenance and support of said Rosa Stockberger, should she by reason of age, illness or any other cause, in the opinion of my Trustees, be incapable of disbursing it; and I further authorize my Trustees to expend out of the principal of said Trust such sums as my Trustees, in their sole discretion, may consider to be for the best interest of said Rosa Stockberger, during illness or emergency of any kind."
Rosa Stockberger was 71 years old when the testatrix died. She had resided in the decedent's household, as a domestic servant, continuously for the preceding 46 years. The decedent furnished her board and lodging and paid her a weekly wage which, for several years preceding testatrix' death, was $10. For a period of 7 or 8 years before testatrix' death Rosa Stockberger had an additional independent annual income of $600 to $700 from investments of her accumulated savings. During the same period she expended about $800 annually from her approximate annual income of $1200 for clothing, medical care, medicines, charitable contributions and incidental expenses.
Extensive judicial consideration has been given to the application of the principle which determines how the right to a charitable deduction is affected by the existence of a power to invade the trust principal for the benefit of the private life tenant before transfer of the remainder to charity, where the trust was created for both private and charitable purposes. In Ithaca Trust Co. v. United States, 1929, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, the Supreme Court considered the question raised by a decedent's testamentary gift of a life estate in his residuary estate to his wife with the remainder, in trust, to charity, coupled with an express power to the wife to consume the principal to any extent "that may be necessary to suitably maintain her in as much comfort as she now enjoys". In applying the principle that deduction *676 of the beneficial interest of the charity from the gross estate may be taken only if that interest is ascertainable at the time of decedent's death, the Supreme Court held that the wife's power to invade did not make ascertainment of the gifts to charity so uncertain as to preclude charitable deduction. The court said (279 U.S. at page 154, 49 S.Ct. at page 291):
"The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator, and even after debts and specific legacies had been paid, was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs."
Some courts, because of the two sentences last quoted, developed a theory that the effect of a power to invade the principal depended on the likelihood or unlikelihood of the occurrence of an actual invasion.[3] An asserted conflict of the decision of the Court of Appeals for the Sixth Circuit with decisions of other Circuit Courts and of the Supreme Court impelled a grant of certiorari in Merchants Nat. Bank of Boston v. Commissioner, 1943, 320 U.S. 256, 64 S.Ct. 108, 110, 88 L.Ed. 35. There decedent's will established a trust for private and charitable purposes which permitted invasion of the trust corpus "at such time or times as my said Trustee shall in its sole discretion deem wise and proper for the comfort, support, maintenance and/or happiness of my said wife, and it is my wish and will that in the exercise of its discretion with reference to such payments from the principal of the trust fund to my said wife * * * my * * * Trustee shall exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust." Holding that the charitable deductions were not allowable because the extent to which the principal might be used was not restricted by a fixed standard based on the widow's prior way of life, the court said (320 U.S. at pages 260, 261, 64 S.Ct. at page 111):
"Not infrequently the standards by which the extent of permissible diversion of corpus is to be measured embrace factors which cannot be accounted for accurately by reliable statistical data and techniques. Since therefore, neither the amount which the private beneficiary will use nor the present value of the gift can be computed, deduction is not permitted. Cf. Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L.Ed. 667.
"For a deduction under § 303(a) (3) to be allowed, Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. Cf. Humes v. United States, 276 U.S. 487, 494, 48 S.Ct. 347, 348, 72 L.Ed. 667. Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. And, in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach *677 the charity are thus accurately calculable * * *."
Later, in Henslee v. Union Planters National Bank & Trust Co., 1948, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259, though the beneficiary had died leaving the trust corpus intact, the Supreme Court reversed the Court of Appeals and again applied the principle as it had in Merchants Nat. Bank of Boston v. Commissioner, supra. The Court of Appeals had held[4] that the complaint's allegations of the beneficiary's great age, independent means and modest tastes raised a triable issue of fact as to whether the trust corpus was threatened with invasion and the charitable interest subject to depletion in favor of the beneficiary. On this question the Supreme Court said (335 U.S. at pages 598, 599, 69 S.Ct. at page 292):
"It is apparent on the face of the complaint that this testator's will did not limit the trustees' disbursements to conformity with some ready standard * * *.
"We do not overlook the unlikelihood that a woman of the mother's age and circumstances would abandon her customary frugality and squander her son's wealth. But, though there may have been little chance of that extravagance which would waste a part or consume the whole of the charitable interest, that chance remained. What common experience might regard as remote in the generality of cases may nonetheless be beyond the realm of precise prediction in the single instance. The contingency which would have diminished or destroyed the charitable interest here considered might well have been insured against, but such an arithmetic generalization of experience would not have made this charitable interest `presently ascertainable'".
It is clear, therefore, that two separate aspects must be considered in this case. The first is whether the extent of the invasion in exercise of the power granted by this decedent is measurable by a standard ascertainable at her death; if it is not, the deduction is not allowable irrespective of the probabilities or improbabilities of actual invasion. The second is that, if the extent of the invasion under the power is measurable by such an ascertainable standard, the amount of the invasion must be factually determined and subtracted from the testamentary gift to charity and the balance so determined is then deductible from the gross estate.
Subsection (a) of the seventh section of the decedent's will provided for the outright payment of the trust income to Rosa Stockberger. The beneficiary was free to use that income for any purpose including, but not limited to, her own support. The trustees' right to apply the trust income for her support existed only if, by reason of the causes enumerated, she was incapable of disbursing it. However, the provision of the will which enabled invasion of the principal was devoid of any language which expressly or impliedly restricted the permissible invasion to the beneficiary's support, much less to that standard of support to which the beneficiary adhered at the decedent's death. The principal that could be used was not only so much as might be necessary to support Rosa Stockberger, but as much more as the trustees, in their discretion, might determine to expend for her "best interest" during any kind of emergency. The phrase "emergency of any kind" embraces a multiplicity of conceivable situations the occurrence, magnitude or effect of which are impossible to forecast. The will furnished no yardstick to measure the extent of the coverage of the phrase "for the best interest" of the beneficiary, except the trustees' sole discretion. It is evident that this will established neither a sufficient standard in fact nor one capable of statement in money. No court or actuary could reliably predict, at decedent's death, what *678 emergencies would arise, what the trustees, in such emergencies, would determine to be for the beneficiary's best interest or what the trustees would expend therefor. Comparable provisions existed in Gammons v. Hassett, 1 Cir., 1941, 121 F.2d 229; Industrial Trust Co. v. Commissioner, 1 Cir., 1945, 151 F.2d 592; De Castro's Estate v. Commissioner, 2 Cir., 1946, 155 F.2d 254; Newton Trust Co. v. Commissioner, 1 Cir., 1947, 160 F.2d 175; Seubert v. Shaughnessy, 2 Cir., 1956, 233 F.2d 134.
The cases cited by plaintiffs are reasonably distinguishable. Lincoln Rochester Trust Co. v. McGowan, 2 Cir., 1954, 217 F.2d 287, 289, upon which plaintiffs most strongly rely, was decided by a divided court. There the authorized invasion was "to meet any unusual demands, emergencies, requirements or expenses" for the beneficiary's personal needs. Moreover, the will expressly so defined and limited the emergencies intended to be provided for that the majority of the court held that the testator's purpose was merely to insure that the beneficiary would continue to enjoy her accustomed standard of living. The court said (at page 292):
"Patently subjective criteria such as `happiness' and `pleasure,' which would render the standard too indefinite * * * are noticeably absent here."
To these patently subjective criteria may be added "best interest". We hold, therefore, that the extent of the invasion of the trust principal under the power granted by this decedent's will was not measurable by any standard ascertainable at her death and that the Commissioner correctly disallowed the deduction.
The Commissioner disallowed a further deduction of $1,336.50 for claimed administration expenses. The parties have stipulated that this sum was expended by plaintiffs for brokers' commissions and appraisers' fees in the sales of certain of decedent's real estate by the plaintiffs. The parties also agree that these sales were made by the plaintiffs in exercise of the general power of sale given to the plaintiffs by the express terms of the decedent's will. There is neither stipulation nor evidence of the reasons for any of the sales.
Section 812(b) (2)[5] of the Internal Revenue Code of 1939 authorizes deduction from the value of the gross estate of such amounts for administration expenses as are allowed by the jurisdiction under which the estate is administered. Section 81.32 of Treasury Regulation 105 defines administration expenses to include expenses actually and necessarily incurred, inter alia, in the payment of debts. Section 81.35 of the same regulation provides that miscellaneous administration expenses include appraisers' fees, and that brokerage fees and other reasonably necessary expenses attending a sale are deductible if the sale is necessary to pay decedent's debts.
In Pennsylvania there is a conclusive presumption that a general power of sale in a will is for the payment of decedent's debts. From the exercise of such a power of sale arises the inference that the sale was for the purpose presumed by law. In re Shaffer's Estate, 1948, 360 Pa. 390, 61 A.2d 872. No evidence was here offered to overcome the inference. The expenses disallowed are such administration expenses as are allowed by the Commonwealth of Pennsylvania. The unchallenged inference is that the expenses are, as well, expenses of sales necessary to pay decedent's debts. Similar expenses were held to be deductible in Martha A. Allison Estate, 1946, 5 T.C.M. 992 and Estate of Louis Sternberger, 1952, 18 T.C. 836.[6] The Commissioner erred in disallowing the deduction for these expenses and, pursuant to their stipulation, the parties will compute, consistently with this opinion, the amount of refund due the plaintiffs and *679 will submit an appropriate order for the entry of judgment in favor of the plaintiffs in the amount due, including interest.
NOTES
[1] Internal Revenue Code of 1939, § 812 (d) as amended by §§ 403(b) (1), 408 (a) and 409(a) of the Revenue Act of 1942 and by § 511(a) of the Revenue Act of 1943 and by § 5 of the Joint Resolution of February 26, 1947, 61 Stat. 6, 26 U.S.C. § 812(d); Treasury Regulation 105 §§ 81.44, 81.46.
[2] Internal Revenue Code of 1939, §§ 812 (b) (2), 26 U.S.C. § 812(b) (2); Treasury Regulation 105 §§ 81.32, 81.35.
[3] See Commissioner of Internal Revenue v. Bank of America, 9 Cir., 1943, 133 F.2d 753; Commissioner of Internal Revenue v. Wells Fargo Bank & Union Trust Co., 9 Cir., 1944, 145 F.2d 130.
[4] Union Planters National Bank & Trust Co. v. Henslee, 6 Cir., 1948, 166 F.2d 993.
[5] 26 U.S.C. (1952 ed.) Sec. 812.
[6] Affirmed 2 Cir., 1953, 207 F.2d 600, reversed on another issue 1954, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246.