## Burleigh Estate.

374

Argued October 6, 1961. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

reargument refused December 29, 1961.

*J. Murray Egan,* with him *Donald W. Shaffer,* and *Weller, Wicks and Wallace,* for appellants.

*James C. Evans,* with him *Evans, Ivory & Evans,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, December 5, 1961:

Clarence Burleigh died testate on February 25, 1923, leaving a last will dated November 5, 1919. The question involved: What shares did various heirs take under the Fifth paragraph of Burleigh's will?

Testator, in the Fifth paragraph of his will, gave (a) his son income for life, (b) at his son's death, maintenance and support to his widow for life, (c) maintenance and support during their minority for children of his son living at his death, and (d) after said children reach 21, balance of the net income to them for life.

The Fifth paragraph then relevantly provides: ·

"And after the death of my said son, my said daughter in law, and of all said children of my said son living at the time of my death, then my said trustees shall assign transfer and convey, all of my estate then remaining and being in their hands, *equally to my said brother and sister, or their heirs,** in fee simple, absolutely and unconditionally."

This was a strange will because the testator after giving certain grandchildren income for life, gave, for reasons known only to himself, the principal, not to their children or issue, but to his brother and sister or their heirs.

Testator at the time of the execution of his will was 66 years old. He had a son, Clarence Burleigh, Jr., who was 40 years of age and was married to Marguerite Brown Burleigh. They had 3 children—Ida Jeanette Burleigh Elterich, who was 15 years of age; Clarence Burleigh, III, who was 10 years of age; and Florence Burleigh Edwards, who was 6 years of age. Testator also had a sister, Minnie B. Ferguson, 48 years of age; and a brother, William T. Burleigh, 57 years of age. Each of the above named relatives survived testator.

Clarence Burleigh, Jr., died July 5, 1936. Testator's brother died on March 23, 1943. Testator's sister died on February 5, 1951. Testator's last surviving grandchild died January 26, 1959. Marguerite Brown Burleigh, the last surviving income beneficiary, died January 30, 1960. Thereafter the trustees filed this, their final account.

At the audit of the account, Philip B. Ferguson, who was a child of decedent's sister, claimed as her heir one-half of the trust corpus. Ferguson contended that testator's gift to his brother and sister gave each of them at testator's death a vested one-half interest

---

* Italics throughout, ours.

in the principal of the trust, and that testator's sister's one-half interest in the trust corpus was devised by her to her husband and by him to claimant. Claimants, (a) Thomas D. Burleigh, a child of testator's brother,[*] and (b) Margery E. Burleigh, a daughter of William S. Burleigh, who was a deceased child of testator's brother, contend that testator's words *"or their heirs"* provided an alternative substitutionary gift to the heirs of his brother and sister should his brother and sister predecease the last surviving income beneficiary, and that all such heirs should take per capita. The lower Court held, "that on the death of the testator an equal and therefore one-half remainder interest in the trust established by his will vested in Minnie B. Ferguson, his sister, and in William T. Burleigh, his brother, which interests were not divested on their deaths, but were transmitted by their respective wills."

The pertinent principles of law are well settled; their application is sometimes difficult.

It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain: *Dinkey Estate,* 403 Pa. 179, 168 A. 2d 337; *Pruner Estate,* 400 Pa. 629, 162 A. 2d 626; *Wanamaker Estate,* 399 Pa. 274, 159 A. 2d 201; *Hope Estate,* 398 Pa. 470, 159 A. 2d 197.

---

* Dorothy Burleigh Courtney, another child of testator's brother, was not represented in this appeal.

Testator's will is artistically drawn and his intent is clear until the clause in question. The word "heirs" is a technical word which for centuries has had a technical meaning. A conveyance to A *or* his heirs—unlike a conveyance to A, or a conveyance to A *and* his heirs— was construed to mean at common law, that the conveyance to the heirs was substitutionary and in case of A's death before the testator the heirs took as purchasers: *Mallory's Case,* 5 Coke 112a, 1 Co. Lit. 494; *Gittings v. M'Dermott,* 2 Mylne & Keen 69; *In re Crawford's Trusts,* 2 Drewry's Report 234.

While several early Pennsylvania cases held that "A and his heirs" were synonymous with "A or his heirs", our later decisions have followed the common law and held that in the latter case the gift to the heirs was substitutionary unless the language of the entire will, in the light of the surrounding circumstances, indicated a different intent: *Golden's Estate,* 320 Pa. 4, 181 A. 484; *Simpson's Estate,* 304 Pa. 396, 156 A. 91. Testator did not specifically or clearly say when the gift to his "brother and sister or their heirs" should vest, and therefore we must consider this language together with the other language of his will and the circumstances surrounding him when he made it. These aid us in ascertaining Burleigh's intent.

In the Fourth paragraph of his will testator gave $10,000 to his brother and $10,000 to his sister. Under this language, testator's brother and sister took a vested interest at testator's death and if testator had used the same language in the Fifth paragraph his brother and sister would have taken a vested interest at his death, even though their possession and enjoyment was postponed until the death of the last surviving life tenant. We believe it is clear that when testator used different words of gift, namely, "equally to my brother and sister *or* their heirs", he meant and intended to create a different gift.

Moreover, "or" is prima facie and ordinarily and customarily used to indicate an alternative;* and if its ordinary and usual meaning is adopted, the heirs would take the residuary estate (if they took at all) *as purchasers.* In such event it would be necessary to determine (1) whether the gift to the heirs of testator's brother and sister would vest at the time of the death of the brother and sister respectively, or at the death of the last surviving life tenant and (2) if the latter, (a) whether the word "equally" means equally per capita among all (then) surviving heirs or (b) equally among heirs of the same class, and per stirpes among the issue of a deceased member of that class.

The circumstances surrounding the testator at the time he made his will confirm that the word "or" is used in its ordinary and customary meaning. Before his brother, age 57, and his sister, age 48, could take *in possession* and enjoy testator's residuary estate they would have to survive testator's son, who was at the execution of the will 40 years of age, and his son's widow, and his son's three children who were, respectively, 15, 10 and 6 years of age. It is reasonable to believe—indeed it is almost a certainty—that testator believed his brother and sister would *not* survive *all* of these 5 young life tenants, and he therefore meant and intended his gift of the principal of his residuary estate to ". . . *or* their heirs", to be an alternative substitutionary gift to the heirs of his brother and sister as purchasers, using his brother and sister as the line of inheritance, with the heirs of testator's brother taking one-half of the residuary principal through the brother's line, and the heirs of testator's sister taking a one-half share through her line.

---

* While "or" has been and can be interpreted to mean "and", that is not its ordinary or customary meaning and it will be so construed only when it is clearly necessary to carry out testator's intent: *Simpson's Estate*, 304 Pa., supra; *Gilmor's Estate*, 154 Pa. 523, 26 A. 614.

The word "equally" *as used herein* does not require a per capita distribution among *all* heirs. "Equally", prima facie, means as appellants contend, a per capita distribution among the heirs. However, appellants then admit, as they logically and under the authorities must —*Love Estate,* 362 Pa. 105, 66 A. 2d 238—that the word "equally" means *equally among heirs of the same class,* but the issue of a deceased member of that class would not take equally with the members of the first class, but would take per stirpes.

While each party can find canons of construction to support his and her respective claims, we find it neither necessary nor helpful to resort to or discuss these canons or the allegedly pertinent authorities. "While precedents in will cases are generally of little value, because few wills have a twin brother, . . .": *Newlin Estate,* 367 Pa. 527, 536, 80 A. 2d 819, we can find no case which is directly in point or rules the instant case. It will suffice to say that from a consideration of the entire will, its scheme of distribution, the circumstances surrounding the testator when he made it, and of course the presently existing circumstances, we believe that testator intended the principal of his residuary trust estate to be paid in equal shares, viz., (a) one-half to those heirs of his sister who were living at the death of the last surviving life tenant, namely, Philip B. Ferguson, and (b) one-half to those heirs of his brother who were living at the death of the last surviving life tenant, the then living heirs of a deceased child to take per stirpes the share of their deceased parent, namely, one-third (of this one-half) to Thomas D. Burleigh, one-third to Dorothy Burleigh Courtney (children of testator's brother), and one-third to Margery Elisabeth Burleigh (daughter of a deceased son of testator's brother).

Decree affirmed; each party to pay own costs.