## Springman Estate

*Paul C. Wagner*, for exceptant.

*Charles J. Biddle* and *Peter M. Mattoon, H. Ober Hess, Ballard, Spahr, Andrews & Ingersoll,* contra.

SAYLOR, J., December 23, 1965.—In his adjudication of a trustees' account filed upon the death of Irma Reckefus, the last survivor of the husband, brothers and sisters of testatrix, the learned auditing judge awarded back to the surviving trustee one fourth of the principal in trust for Irma Reckefus's son, sole secondary life tenant, and to various named charities the balance of the corpus. The son, Scott Reckefus, has filed exceptions, claiming that the entire principal should remain in trust and that he should receive during his life all net income therefrom as his mother was receiving such income at the time of her death.

Christina K. Springman, who died in 1945, made bequests to 13 relatives and friends, and then, in paragraph seventeenth of her will, placed the residue of her estate in trust and made provision therefrom, inter alia, for maintaining a home for her brothers and sisters, and upon the death of the survivor of them provided that the property was to be conveyed to Scott Reckefus in fee simple. Testatrix also provided for the payment monthly of small amounts of income to her brothers and sisters, and for the payment of the balance of the income to her husband during his life.

In paragraph eighteenth, testatrix directed that if any of her brothers or her sister Gladys should predecease her husband, "the income theretofore paid to him or her shall be paid to my said husband", but that in the case of Irma Reckefus pre-deceasing her husband, "the income heretofore paid to her should be paid to her son, Scott Reckefus, until the death of my said husband".

In paragraph nineteenth, testatrix provided that upon her husband's death the net income from her entire residuary estate was to be paid "in even and equal parts, unto such of my four brothers and sisters who

may be living at that time in quarter-yearly install-
ments, for and during the term of their natural lives,

"Provided, however, that if my sister, Irma Recke-
fus, shall have predeceased my husband, or if she shall
have survived him, then upon her death, I desire that
her son, Scott Reckefus, shall receive the share of
income which she would have received had she been liv-
ing at the time of his death—which said share shall
be paid to the said Scott Reckefus for and during the
term of his natural life, *without augmentation, after
the death of his mother, by virtue of the death of any
of his said uncles or aunt*, as hereinafter provided".
(Italics supplied.)

Testatrix and all of the four brothers and sisters
survived the husband, and at testatrix' death, the net
income became payable and was paid in equal one-
quarter shares to each of her siblings during their re-
spective lives. Gladys Woelpper, a sister, died in 1954.
Herbert Klee, a brother, died in 1954. Robert Klee, a
brother, died in 1960. Irma Reckefus died May 31,
1964. During Irma's life, her equal one-fourth share of
income was augmented to a third, then to a half, and
finally to the whole thereof, as provided in the will.

The phrase "as hereinafter provided", quoted above
from paragraph nineteenth, is followed immediately by
the sentence which calls for the augmentation of a sib-
ling's share because of the death of either of the
brothers, of Gladys, and also of Irma, should her son
predecease her. The will reads:

"The income theretofore paid to the one so dying
shall be added, in equal shares, to that then received by
my said brothers and sisters".

It would appear from paragraph nineteenth that,
upon Irma's death, her son Scott was entitled, as sec-
ondary life tenant, not to the whole income but only to
one fourth of it, and the auditing judge so decided.
However, the nephew of testatrix asserts that as there

was not, and could not have been, any augmentation of his mother's share by virtue of the death of her sister Gladys or of either of her brothers after his mother's death, they having predeceased her, the prohibition on augmentation was not operative, and that the fortuitous circumstance of his mother's surviving her siblings should not prevent him from receiving income to the same extent that she received it.

In so doing, the nephew attempts to negate the effect of the clause of the nineteenth paragraph emphasized above. If he were to receive more than one fourth of the income he would be receiving an amount augmented "by virtue of the death of any of his said uncles or aunts", no matter at what time or in what sequence they died.

The placing of commas by testatrix before and after the words "after the death of his mother" has no significance one way or another. The "augmentation" of Irma's share must have preceded her death or it would not be part of her share at her death, and it is only after her death that Scott's right to receive income matured.

If testatrix intended that Scott was entitled to receive such augmentation as his mother might have enjoyed because of the death of a brother or sister during her life but not any augmentation occurring because of such a death following hers, she could readily have placed the phrase "after the death of his mother" at the end of the clause containing the gift to him. The clause would then have read: "without augmentation by virtue of the death of any of said uncles or aunt after the death of his mother".

That she did not. It is unnecessary to twist her language to the extent argued by Scott to effect the result for which he contends. The language which is above quoted from paragraph nineteenth, and that language alone, is the source of his gift.

In summary, it would appear that testatrix did not intend that her nephew should benefit from any augmentation whatsoever. Whether Irma died before or after testatrix' husband, at her death her son, if he survived her, was to receive the share of income which she would have received "had she been living at the time of his (her husband's) death". That was one fourth, not one third, not one half, not the whole income.

Despite the fact that the language of paragraph nineteenth is not clear, and in this we disagree with statements of counsel that it is clear, it is our conclusion from reading that paragraph, together with other portions of the will, that it was testatrix' intention as expressed in the will that Scott's share of income be limited to one fourth.

Actually, as stated by the learned auditing judge, there is a question whether Scott Reckefus is entitled to even one fourth of the income or to anything beyond the payment or devise above referred to. In the adjudication it is said:

"Since Scott Reckefus was receiving no income when the survivor of the life tenants (his mother) died, a literal compliance with Item 20 of the will would require that no portion of principal be set aside for his benefit."

Paragraph twentieth provides:

"At and immediately upon the death of the survivor of my husband, my brothers Robert Klee and Herbert Klee and my sisters Gladys Woelpper and Irma Reckefus, if my nephew, Scott Reckefus, shall then be living, I order and direct my Trustees, and the survivor of them *"to set aside for the use and benefit of the said Scott Reckefus assets sufficient to produce an income approximately equal to that which he shall then be receiving* and to pay the income from such assets (or any property substituted therefor) unto the said Scott Reckefus for and during the term of his natural life."

(Italics supplied.)

Although until Irma died Scott was receiving no income, quite properly the auditing judge added to the statement above quoted: "Yet upon a consideration of the entire will, it would seem clear enough that testatrix intended that her nephew, Scott, should receive some income upon the death of his mother". This is accepted by counsel and the court as correct.

We do not accept the conclusion that Scott was the sole concern or the chief beneficiary of testatrix as counsel would have it. Not only were his mother, and his aunt and his uncles the objects of her bounty, but so were strangers to her blood to whom she made bequests. Finally, a considerable number of charities were the ultimate objects. She made no provision for a wife or children of Scott after his death. At such time, the assets from which he receives a life income are to be paid over to what is now known as the Overbrook School for the Blind.

Convincing evidence that the decision of the auditing judge was correct and valid is furnished by additional language of the twentieth paragraph of the will following that above quoted. Testatrix provided that "the balance of the corpus of my residuary estate (upon the death of the survivor of my husband, brothers and sisters) I give and bequeath as follows", naming seven charitable institutions for gifts totalling $40,000, and giving all the rest, residue and remainder to the Overbrook School for the Blind.

Immediately these questions arise:

1. Why set aside a fund to provide income for Scott and dispose *"upon the death of the survivor of my husband, brothers and sisters"* (not the death of Scott alone) of the remaining assets of the trust if Scott were entitled to receive the entire income from the trust principal?

2. Why should seven charities receive their bequests and an eighth be obliged to wait to receive its

preliminary bequest only when Scott's life ends, although the will directs otherwise?

It just does not appear possible to wrest from the language of the will any thought on the part of testatrix, or to seek any intention imbedded in the language, to have Scott receive any share of income greater than one fourth, "without augmentation, after the death of his mother, by virtue of the death of any of his uncles or aunts".

It is hornbook law that a will should be interpreted so as to give effect to all of the provisions wherever possible. The auditing judge's interpretation does this. It is not necessary to repeat the references to other hornbook principles so well reviewed in Burleigh Estate, 405 Pa. 373 (1961).

The distribution ordered in the adjudication and the supplemental adjudication is that which a study of the will in all its parts dictates as proper. It is a distribution intended by testatrix, whatever ambiguities her will contains. There is no need, nor is it proper, to supply language to the will as was done in the cases cited by the exceptant.

Accordingly, the exceptions are dismissed and the adjudication and supplemental adjudication are confirmed absolutely.

DISSENTING OPINION

LEFEVER, J., December 23, 1965.—I agree with the majority "that the language of paragraph Nineteenth is not clear". In fact, both the nineteenth and twentieth paragraphs of this ineptly drawn will are unclear and ambiguous. However, it was testatrix' evident intention that Scott Reckefus, her nephew and closest surviving blood relative, was to receive all of the income for life, thereby merely *postponing* the receipt by Overbrook School for the Blind of the principal of this trust.

A careful examination of testatrix' entire will clear-

ly reveals that the primary objects of her beneficence were first her husband and then her six closest relatives, namely, her two brothers, Herbert Klee and Robert Klee, her three sisters, Gladys Woelpper, Irma Reckefus and Beatrice Klee and her only blood nephew, Scott Reckefus.[1] After providing for these favored beneficiaries, she names the charities, which take the principal of the trusts of her residuary estate, after the death of her primary beneficiaries.

Testatrix exhibited her special interest in her nephew, Scott, by giving to him (1) the fee to premises 1233 South Fifty-second Street, Philadelphia, after the death of the survivor of her brothers and sisters, to whom she gave life estates therein; (2) substituting him, on Irma's death, as the beneficiary of the $50 per month income, which she gave to Irma during the life of testatrix' husband, and (3) substituting him, upon Irma's death, as the beneficiary of such other income from the trusts as Irma was then receiving.

There is no dispute as to the amount of income which Irma was entitled to receive under the will, upon the occurrences of the various possible events. Thus, if she, her two brothers and her sister survived testatrix' husband, Irma was to receive a quarter thereof; if three of them survived him, she was to receive a third thereof; if two of them survived him, she was to receive one half thereof; and if she alone survived, she was entitled to all of the income. Likewise, if the four brothers and sisters survived testatrix' husband and thereafter died, the same result followed, with this important exception, that upon Irma's death, her share, whatever it then might be, was to go to her son, Scott.

---

[1] Following the usual preliminary clauses, the will contains 13 numbered paragraphs containing specific and pecuniary gifts to friends and relatives, both by blood and by marriage. Thereafter come the controversial nineteenth and twentieth paragraphs, creating the trusts for her husband, brothers, sisters and nephew.

Accordingly, as actually occurred, on testatrix' husband's death, Irma received one quarter of the income; after Gladys died in January, 1952, Irma received one third thereof; after Herbert died in June, 1954, Irma received one half thereof; and after Robert died in November, 1960, she received all of the income.

To what share of the income is Scott entitled?

The ambiguity and confusion in the instant case arise out of (1) the clumsy attempt of the scrivener to provide in the first subparagraph of the nineteenth paragraph of the will for two entirely different contingencies, namely, the death of Irma *before* testatrix' husband's death and Irma's death *after* his death, and (2) the failure of the scrivener to provide specifically in the twentieth paragraph for the possibility that Irma might survive testatrix' husband, her two brothers and her sister, Gladys, which, of course, is the event which occurred.

Paragraph nineteenth reads, inter alia: "PROVIDED, however, that if my sister, Irma Reckefus, shall have predeceased my husband, or if she shall have survived him, then upon her death, I desire that her son, Scott Reckefus, shall receive the share of income which she would have received had she been living at the time of his death—which said share shall be paid to the said Scott Reckefus for and during the term of his natural life, without augmentation, after the death of his mother, by virtue of the death of any of his said uncles or aunt, as hereinafter provided.

"At and immediately upon the death of my said brothers, Robert Klee and Herbert Klee, and my sister, Gladys Woelpper (and of my sister, Irma Reckefus, should her son Scott predecease her) the income theretofore paid to the one so dying shall be added, in equal shares, to that then received by my said brothers and sisters."

This paragraph undoubtedly was intended to read:

"Provided, however, that if my sister, Irma Reckefus, shall have predeceased my husband, or if she shall have survived him, then upon her death, I desire that her son, Scott Reckefus, shall receive the share of income which she would have received had she been living at the time of his death *or which she was receiving at the time of her death, depending upon which event occurred ...*"

The italicized words, although not present in the will, are implied and were obviously intended by testatrix.

In contrast, the majority in reaching its conclusions (1) in effect deletes from the second to last line of the first subparagraph of the nineteenth paragraph, the crucial phrase, "after the death of his mother" and (2) does not even consider or discuss the important parenthetical language in the next subparagraph, viz. "(and of my sister, Irma Reckefus, should her son, Scott, predecease her. ...."). These vital words should not be disregarded.

The majority decides that the phrase "after the death of his mother" is either meaningless or refers to the time Scott is to receive Irma's share of the income, and, therefore, has no effect on the "augmentation" of Scott's share "by virtue of the death of any of his uncles or aunt, as hereinafter provided". In reaching this conclusion, the majority relies upon the fact that the clause, "after the death of his mother", does not appear at the end of the sentence. However, this court, speaking through President Judge Klein, in Abele Estate, 34 D. & C. 2d 273, 286, (affirmed, 416 Pa. 212), stated: "The difference in location of these words in the sentence structure does not change their interpretation." Following this reasoning, the fact that the phrase, "after the death of his mother," is not located at the point in the sentence where the majority deems it should have appeared, does not justify the majority in

ignoring these critical words. Moreover, the time Scott is to receive income appears at the beginning of this sentence, viz.: "If my sister, Irma Reckefus, *shall have predeceased my husband,* or if she shall have survived him, then *upon her death,* I desire that her son, Scott Reckefus, shall receive the share of the income . . ." (Italics supplied.)

This clearly fixes the time[2] at which Scott is to take, namely, either upon testatrix' husband's death, if Irma predeceases him, or upon Irma's death if she survives him. It would be useless surplusage to repeat the event upon which Scott takes after the word "augmentation", if "after the death of his mother" refers to this. However, if this phrase be construed as the time to bar further augmentation, the whole paragraph takes on light.

Moreover, the next subparagraph provides that the shares of income of Robert, Herbert, Gladys and Irma are to be increased if they survive the others. But a critical exception is made in the case of Irma, namely, "should her son Scott predecease her". What would have been the share of Robert, if Gladys, then Herbert and then Irma died, with Scott alive? Obviously, one half of the income. But the majority holds that no matter what the order of their deaths might be, Scott would be entitled to receive only one quarter. What would happen to the fourth quarter? An intestacy? Should it go to the charity? In the face of the later provision, this is absurd. This is a classic case of gift by implication: Vandergrift Estate, 406 Pa. 14; Cope Estate, 353 Pa. 306; Lippincott's Estate, 276 Pa. 283, and Fox's Estate, 222 Pa. 108. It follows that Scott is entitled to this additional one quarter, giving him a total of one half of the income. If this be so, the reasoning of the majority fails.

This brings us to the language testatrix used in

---

[2] As well as the share.

paragraph twentieth. Therein, testatrix directed her trustees "to set aside for the use and benefit of the said Scott Reckefus assets to produce an income approximately equal to that which he shall then be receiving and to pay the income from such assets (or any property substituted therefor) unto the said Scott Reckefus for and during the term of his natural life".

The quoted language is significant. If Scott was to receive only one quarter of the income and this was both the maximum and minimum to which he was entitled, as the majority decides, why did testatrix use such complicated language? But this was not her intention. Her language definitely implies that the amount of income Scott was to receive was to vary with the order of deaths of the income beneficiaries, and if any of Scott's mother's brothers and sister predeceased her, Irma's share, and accordingly Scott's share, would correspondingly increase. Testatrix placed one, and only one, limitation upon the amount of income which Scott was to receive, namely, "without augmentation, *after the death of his mother*, by virtue of the death of any of his uncles or aunt, as hereinafter provided." (Italics supplied).

In short, Scott was to receive precisely the same income his mother, Irma, was entitled to receive at the time of her death. Testatrix' plan to have Scott take in substitution the share of his mother appears throughout her will, viz.: (1) he is to take her $50 monthly income on her death; (2) she specifies in the nineteenth paragraph "I desire that her son, Scott Reckefus, shall receive the share of income which she would have received had she been living . . ."; (3) the share of Irma, if dead, is to go to her surviving brothers and sister "should her son Scott predecease her" and (4) Scott is not to be in competition with his aunt and uncles, because testatrix provides in paragraph nineteenth that Scott's share shall be "without augmen-

tation, after the death of his mother, by virtue of the death of any of his said aunts and uncles . . ." It follows that upon the death of testatrix' husband, if Irma predeceased him, Scott would have received the income "which she would have received had she been living at the time of his death . . ." Thus, if Irma had been the first to die, Scott would have received the one quarter of the income to which she would have then been entitled. If Irma had been the second to die, he would have received one third of the income. If Irma had been the third to die, he would have received one half of the income, and if Irma were the last to die, Scott would have received all the income. Moreover, in the event that all four brothers and sisters survived the husband, as actually occurred, if Irma were the first to die, she would have been receiving one quarter of the income when she died, and Scott would have received that amount. Likewise, if Irma had died after Gladys, Scott would have received the one third of the income which Irma was then receiving, and if she had died after Herbert, Scott would have received the one half of the income which Irma was then receiving. These results flow inexorably from the direction that the trustees were "to set aside for Scott's benefit assets sufficient to produce income approximately equal to that which he shall then be receiving."

The anomaly in this case is that Irma survived testatrix' husband, her two brothers and her sister. Consequently, Irma was receiving all of the income when she died and Scott was not receiving any of the income. Therefore, if the will be construed literally and strictly, Scott is not now entitled to any income at all. The paradox is that under this literal interpretation of the language of the will, the only event upon which Scott would not receive any income is the one which occurred, namely, that his mother, Irma, survived testatrix' husband and her brothers and sister, and thereby was

receiving the largest possible share of the income, viz., *all*. The majority opinion concedes that this construction of the will would be too harsh, stating, at pages 5 and 6:

"Actually, as stated by the learned auditing judge, there is a question whether Scott Reckefus is entitled to even one-fourth of the income or to anything beyond the payment or devise above referred to. In the adjudication it is said: 'Since Scott Reckefus was receiving no income when the survivor of the life tenants (his mother) died, a literal compliance with Item 20 of the will would require that no portion of principal be set aside for his benefit'. . .

"Although until Irma died Scott was receiving no income, quite properly the auditing judge added to the statement above quoted: 'Yet upon a consideration of the entire will, it would seem clear enough that testatrix intended that her nephew, Scott, should receive some income upon the death of his mother.'"

It follows that this court unanimously agrees that testatrix did not intend to deprive Scott of *all* income by the accident of Irma's surviving testatrix' husband and her two brothers and sister. The question is what share Scott is entitled to receive.

When a will fails to make specific provision for the disposition of income or principal upon a certain contingency, which has, in fact, occurred, and the intention of testatrix is evident from the four corners of the will, a gift will be implied to carry out such intention: Bosworth's Estate, 337 Pa. 265. As stated by Judge Bolger for this court in construing the will in Wolstenholme Estate, 26 D. & C. 2d 615, 620:

"Its phraseology is obscure and ambiguous, wherefore we must impute to it such a meaning as under the circumstances will conform to the testatrix' probable intention and be most agreeable to reason and justice and not lead to an unnatural or inequitable result: Clark's Estate, 359 Pa. 411".

Testatrix intended Scott to receive the income which his mother was receiving at the time of her death, namely, *all* of the income.

It is apparent that there is an ambiguity in paragraph twentieth as to when the seven charities are to receive the $40,000 pecuniary legacies. This occurs because the scrivener did not expressly provide what should happen in the event that Irma was the last survivor, which event occurred. Paragraph twentieth is patently the termination clause for the primary life estates set up for testatrix' husband and her four brothers and sisters. If Scott "shall then be living", the trustees are ordered to set aside "assets sufficient to produce an income approximately equal to that which (Scott) shall then be receiving". This is an odd and uncertain direction. Why "approximately equal"? Why not equal? It may be because Scott might have been receiving a quarter, a third or a half, since his mother's death was obviously in testatrix' mind, but that proportion by then would have been certain and the direction could readily have been phrased to specify "equal income". Why the vagueness?

The balance of the paragraph provides a clue. Testatrix did not visualize Scott as receiving income from *all* her assets. She anticipated two funds. However, she again refrains from definite specification as to the size of each. Perhaps she thought that the prospect that Irma would be the last of the primary life tenants to die was too remote, or perhaps she had a blind spot as to 100 percent of the income going to Irma. She was definite as to setting up the two funds, however. The first fund was to provide Scott with an income "approximately equal" and the second fund was to provide $40,000 *immediately* "(upon the death of the survivor of my husband, brothers and sisters)" for the seven named charities. And testatrix evidently thought that $40,000 might well be the sum total of this second fund,

because she does not dispose of any *specific balance* of this second fund, but does dispose generally in clause (h) of "all the rest, residue and remainder of my residuary estate", which would include the balance, if any. It should be noted that testatrix had previously provided for disposition of the "principal or corpus" of Scott's fund upon his death, so that clause (h) was clearly intended to dispose of the balance of the second fund, *if any*. There would, of course, be no balance if the first fund supporting the income to Scott consisted of all testatrix' assets, minus the $40,000.

While the construction of paragraph twentieth is as difficult as that of the nineteenth, the majority of the court are conspicuously silent about the meaning of the phrase "approximately equal". Also, the significance of testatrix' testamentary desire in expressly setting up two *funds*, contrasted with her failure to specify the size of the funds, has not been mentioned by the majority.

In summary, it is my opinion that the intention of testatrix, gleaned from an examination in entirety of this poorly framed and ineptly expressed will, was that upon the happening of the event, which has occurred, the $40,000 in legacies was to be paid to the seven charities; that the balance was to be held in trust to pay all income therefrom to Scott for life, and that, upon his death, the corpus remaining was to be distributed to the Overbrook School for the Blind. In any event, Scott should not receive less than one half of the income, the maximum amount to which he would have been entitled under the express terms of the will and the literal interpretation thereof, if his mother, Irma, had been the third of testatrix' brothers and sisters to die and had predeceased Robert.

As between testatrix' favorite surviving blood nephew, who is the only child produced by testatrix and all of her brothers and sisters, and the charity, who has

no apparent claim upon testatrix' bounty, I would resolve the ambiguities in the will in favor of the blood relative. This is particularly so, where, as here, the gift to the charity is thereby merely postponed. Scott is only entitled to income for life, without any right to receive any of the principal.[3]

Hence, I dissent.

Judge Shoyer joins in this dissenting opinion.

---

[3] Under no circumstances do Scott's wife or two children have any right to the principal or income of this trust.