## Risk's Appeal—Stauffer's Estate.

1. It is a rule of construction in a will, that when a testator designates the objects of his gift by their relationship to a living ancestor, they take equal shares per capita.

2. The per stirpes rule belongs properly to the statutes of distribution, by which the next of kin of a deceased heir are placed in his stead.

3. These rules are controlled by the general intention of the testator.

4. A testator having directed an equal division of a portion of his estate amongst his children, ordered that his real estate should be sold, and, after giving out of the proceeds $1200 to one of his two sons, directed that the residue should be equally divided between the two sons "and the children of (his) daughter Catharine," who was then married and living. Held, that Catharine's children took per stirpes.

APPEAL from the decree of the Orphans' Court of Lycoming county, by James Risk and Catharine his wife, William H. Risk, Clarence Risk and James B. Risk, in the distribution of the estate of John Stauffer, deceased.

John Stauffer, by his will, proved September 8th 1847, after

the ordinary directions as to payment of debts, &c., and making some provisions for his wife, further directed as follows, viz.:—

"Third. I direct that all my personal and real estate shall remain, as at present, unsold. Until after the death of my beloved wife, Margaret, the lawful income of one-third of the whole income arising from the same shall go to her benefit during her lifetime. The residue of the lawful income, being two-thirds, shall be and continue to be an accumulating fund until after her death. Then said two-thirds (after the death of my wife) shall be equally divided between my beloved children, George, Joseph, and Catharine, now wife of James Risk, as well as whatever may have accumulated from said income of two-thirds. And I further direct and bequeath to my beloved children, George and Joseph, the right to occupy my real estate as they now occupy it, and to hold the `same until after the death of my beloved wife—which shall be held under the same terms and restrictions as at present.

"Fourth. After the death of my beloved wife, I will and direct that my real estate shall be divided (as it now is) equally between my beloved children, George, Joseph, and children of Catharine (now wife of James Risk), equally, according to the value thereof, by mutual agreement, or appraisement. Should they not agree in the division as aforesaid of my real estate, then it may be sold, and the money arising from the whole of my real estate shall be equally divided between my beloved children, George and Joseph, and the children of my beloved daughter Catharine (now wife of James Risk). First, before sale, I direct that a fair valuation or appraisement be made according to law of all my estate, by three competent and impartial neighbors, and from the proceeds arising out of or from the sale of my estate, my beloved son, George, shall have twelve hundred dollars—the residue shall be equally divided as aforesaid between my beloved children, George and Joseph, and the children of my beloved daughter Catharine (now wife of James Risk).

"Fifth. Should my beloved son Joseph die without lawful issue, I direct that so much of my estate as I now have willed and directed to him and his heirs, shall fall back to the lawful children of my beloved son George, and the children of my beloved daughter Catharine. Should he, Joseph, die leaving lawful issue behind, then whatever is directed in the foregoing shall be for the benefit of his, the children of my beloved son Joseph, for ever."

And appointed his wife, and son George, his executors.

George died May 1857, leaving children. Joseph, the other son, is still living. Catharine, the daughter married to James Risk (both of whom are living), has three children—William H. Risk, Clarence H. Risk and James B. Risk. The widow of the testator died October 2d 1863; and the land being subsequently sold, an auditor was appointed to make distribution of the pro-

ceeds.  He reported that the children of Catharine Risk did not take *per capita* with their uncles George and Joseph, but were entitled, after deducting expenses and the $1200 to George, to one-third of the fund, and no more.

The report, on exceptions, was confirmed by the court below (Jordan, P. J.) ; this was assigned for error.

*J. W. Comly* and *H. W. Watson*, for appellants.—" Equally to be divided," in a will, means a division *per capita*, not *per stirpes :* Bender's Appeal, 3 Grant 212 ; 43 Eng. Ch. 132 ; Kean v. Hoffecker, 2 Harrington 103 ; 4 Kent's Com. 660, in note ; 1 Roper on Leg. 157 ; Thomas v. Hole, Cas. Temp. Talb. 251 ; Butler v. Stratton, 3 Bro. C. C. 366 ; Phillips v. Garth, Id. 64 ; Tomlin v. Hatfield, 12 Sim. 167 (35 Eng. Chan. Rep. 143) ; Dowding v. Smith, 3 Beav. 541 (Id. 540) ; Leigh v. Norbury, 13 Ves. 340 ; McNeilledge v. Galbraith, 8 S. & R. 46 ; Blackler v. Webb, 2 P. Wms. 383 ; Weld v. Bradbury, 2 Verm. 705 ; Lincoln v. Pelham, 10 Id. 176 ; Witmer v. Ebersole, 5 Barr 458.

The cases establish these two rules of construction :—

1st.  That where a testator gives a legacy or makes a devise to several persons of the same or different degrees of consanguinity to him, or to some other person or persons designated by him, and directs the subject of the bequest or devise to be equally divided between them, such legatees or devisees take equal shares *per capita*.

2d.  That when a testator designates the objects of his bequest or devise by their relationship to a living ancestor, such legatees or devisees take *per capita*.

*H. Johnson*, for appellees.—Distribution by classes must be presumed to be the intention of testators generally, unless the contrary appears, for all are supposed to assent to the general justice of the law on this subject : Fissel's Appeal, 3 Casey 57 ; Baskin's Appeal, 3 Barr 304 ; Minter's Appeal, 4 Wright 114 ; 4 Kent's Com. 600 ; Lincoln v. Pelham, 10 Ves. 166 ; 2 Jarman 81.

The opinion of the court was delivered, May 15th 1866, by

WOODWARD, C. J.—The authorities cited by the learned counsel of the appellants, do justify their proposition, that when a testator designates the objects of his bequest or devise by their relationship to a living ancestor, such legatees or devisees take equal shares *per capita*.  In great strictness of speech, the living of the ancestor, who is referred to only to designate the objects of the testator's bounty, excludes the *per stirpes* rule, which belongs properly to the statutes of distribution, and is a substi-

tutionary rule, by which the children or next of kin of a deceased person who would have been an heir, are placed in his stead.

But, like all other rules of construction, when applied to wills, this one, that entitles children of a living child to take *per capita*, must be controlled by the general intention of the testator. Not that the principle of the *per stirpes* rule is to be preferred because adopted by the statutes of distribution, for it may be the very purpose of the testator, as it is his right, to take his estate out of the principles of the statute. But it is a reasonable presumption that the mind of the testator was familiar with the statutory rule of distributions; and if we see in his will an intention to distribute according to that rule, we should give it effect all the more readily because it is provided by law for cases where there is no will. Why, then, should a testator make a will at all, if he means it should operate as the statute would operate without it? He may desire to give legacies to those who would take nothing under the statute, or increased portions to some who would take—or if content that the rules of the statute shall apply to his whole estate, he may still desire to appoint his own executors. For one or the other, or all of these reasons, he may have been moved to make a will. Whilst we are not to hesitate to allow him to alter the descents provided in the statute, we are not, on the other hand, to presume, from the fact that he made a will, that he meant its construction should be at all possible points inconsistent with the statute.

In a word, a *per capita* construction is not to be forced upon a particular devise, because the devisees under that clause, had they taken under the statute, would have been *per stirpes*.

Now, when we read the whole will of John Stauffer and judge it *ex visceribus* rather than by the judicial constructions that have been placed upon other, and in some respects different wills, we find it impossible to doubt the soundness of the conclusions which were reached by the learned auditor and court below.

In the first clause he provides for his burial. In the second clause he provides for his wife for life. In the third he directs his real and personal estate shall remain unsold until the death of his widow, one-third of the income thereof to be paid to her, and two-thirds of it to accumulate till her death, and then the fund to be divided equally between his three "beloved children, George, Joseph, and Catharine now wife of James Risk."

4. After the widow's death the real estate was to be divided between his "beloved children, George, Joseph, and children of Catharine Risk equally," or if unable to agree upon such a division it was to be sold, and the money equally divided between my "beloved children George, Joseph and the children of my beloved daughter Catharine, wife of James Risk;" but George was to

have $1200 out of the proceeds of the sale, before division, and the residue to be " equally divided as aforesaid between my beloved children George and Joseph, and the children of my beloved daughter Catharine, now wife of James Risk."

5. Should Joseph die without lawful issue, his share was to fall back to George and the children of Catharine, but if they left issue they were to succeed to it.

It is observable that the special provision for the widow, for the accumulation of a fund from the proceeds of the personalty and real estate during her life, and for the preference of George as to $1200, were sufficient motives for making a will in this instance, whilst no motive is discernible for making each of the grandchildren equal with his own children, all of whom he repeatedly calls " beloved." He probably thought his daughter Catharine sufficiently provided for by the 3d clause, and by the fact that she had a husband, and therefore intended that her share of the residuum should rest in her children, but nothing warrants the conclusion that he meant her children to take more than would have been her share. Deriving his impressions no doubt from the statute of distributions he believed equality among his three children, after the preference to George, would be wise and just, and the only peculiarity of the will is that he gave Catharine's share to her children instead of herself. This is exactly what the law would have done, had Catharine been dead and had he died intestate ; and it is no objection to the will that whilst it might have altered the law of descent it did substantially adopt the policy of the law. Had he meant the children to take *per capita* he would doubtless have named them, but meaning that they as a class should be substituted for their mother and take one of three shares, he grouped them three times over in the 4th clause, as " the children of my beloved daughter Catharine." " Equally" means that the class should share equally with George and Joseph. This is the grammatical construction of this adverb, for the names George and Joseph and the class are connected by copulatives that apply all the qualifying terms to them alike. Now if similar words in other wills have been interpreted devises *per capita*, it has been because no inconsistent interest was perceptible in the whole will, but in the preference to George and the equality provided for the rest, we find in this will an intent that is wholly inconsistent with a *per capita* division among Catharine's children, and therefore we reject it without intentional violence to the authorities.

The judgment is affirmed.