## Testamentary Trust Estate of C.W. Klauder

*Thomas J. Timoney* and *James M. Jacquette,* for the accountant.

*Edward Fackenthal,* for Justin Benedict.

*William C. Bullitt, Mary H. Anderson* and *Ethan D. Civan,* for Episcopal Diocese of Pennsylvania and Arkansas.

*Charles E. Donohue, deputy attorney general, parens partiae* for charities.

TAXIS, *S.J.,* December 2, 1994—The fifth and final account of Mellon Bank, N.A., corporate trustee, for the testamentary trust estate created under the will of C.W. Klauder, deceased, sur trust for the benefit of his wife, Jane E. Klauder et al., was examined and audited by this court on July 5, 1994, and re-examined on December 2, 1994.

By Item no. 7 of his will, the testator directed his surviving trustees to terminate this trust 20 years after the decease of the last living child of his. Mary M. K. Jones, the testator's last living child, died on November 2, 1973. The trust terminated on November 2, 1993.

The fifth and final account has been filed to recognize the trust's termination and to seek court approval to distribute nine-tenths of the trust principal on a per capita basis to the heirs and descendants of C.W. Klauder and one-twentieth of the trust principal to each of the Protestant Episcopal Dioceses of Pennsylvania and Arkansas to be used to erect small churches in poor parishes in each Diocese. Objections and supplemental objections to the accountant's proposed per capita distribution of nine-tenths of the trust principal have been filed.

The present accountant received the funds now before this court for audit per adjudication of this court confirmed nisi on November 30, 1983 and per the court approved amended schedule of distribution filed thereto.

The fifth and final account is stated from September 3, 1986 to January 14, 1994. The accountant reports

gross receipts of $227,143.17, of which $239,660.21 remains on hand. The net balance of assets on hand consists of treasury bills (which became due in February of 1994) and cash as set forth on pages 8 and 27 of the fifth and final account. The principal assets are subject to the payment of ($8,078.34) in fiduciary fees due to Mellon Bank, N.A., as well as the payment of ($21,298.05) to Mellon Bank, N.A., the latter of which is to be charged against William A. K. Jones' share and the payment of which will reimburse Mellon Bank, N.A., per a family agreement executed on June 20, 1986. See page 8 of the fifth and final account.

The accountant reports that the principal assets may be subject to the payment of legal expenses incurred by Mellon Bank, N.A., as corporate trustee, to defend itself in the federal suit captioned, *Simpson v. Mellon Bank, N.A.*, no. 93-2054, which suit was filed in the United States District Court for the Eastern District of Pennsylvania.

Justin Benedict filed separate objections with this court on July 1, 1994, objecting to the payment of Mellon Bank, N.A.'s legal fees and expenses incurred in the above-captioned federal suit. The court expresses no view sur this issue at this time.

As of June 14, 1994, the principal balance on hand (which includes the payment of $8,078.34 to the accountant) was revalued at $236,605.61, as was the income balance on hand at $3,206.50.

The trust before this court for audit is not subject to the payment of Pennsylvania transfer inheritance tax as the trust was created prior to the institution of this tax.

All parties having or claiming any interest in this testamentary trust, of whom the accountant has notice

or knowledge, are stated to have received written notice of this audit, in conformity with the rules of court.

All said parties in interest are living, of age, and sui juris except for certain descendants of C.W. Klauder who are either deceased or minors and whose names are listed in paragraph five of the petition for adjudication. The court waives the appointment of a guardian ad litem to represent the interests of all descendants who are minors. The court is satisfied that their interests are adequately represented by adult, sui juris parties in interest, making the appointment of a guardian ad litem unnecessary in accordance with the provisions of 20 Pa.C.S. §§3504, 7183(2).

The Office of Attorney General, on behalf of the Commonwealth of Pennsylvania, as *parens patriae* for charities, issued a charitable gift clearance certificate dated September 28, 1994.

C.W. Klauder executed his last will and testament on November 12, 1895. He amended his will by codicil thereto dated January 26, 1903. At the time of execution, he was the husband of Jane E. Klauder, and the father of five children—George C. Klauder, Mary M. Klauder (later Jones), Emma Klauder (later Barnes), Jeannette Klauder (later Spencer), and Estelle Klauder (later Trites).

The dispositive will provisions made C.W. Klauder's wife and his children the *immediate* objects of his bounty upon his untimely death on March 3, 1905.

By his will, Klauder's estate assets (with the exception of his outright personalty bequests to his wife, Jane E. Klauder, under Item no. 2) passed to his designated trustees or to the survivors thereof, to hold, in trust. The testator directed that trust income, not trust principal, was payable during the trust's existence.

A $2,000 annual annuity was payable from the trust income, in quarterly installments of $500, to the testator's wife, Jane E. Klauder, until the earlier of her death or remarriage. (Item no. 3.) The balance of the trust income was divided into three parts, one-third of which was payable to the testator's wife until the earlier of her death or remarriage, and the remaining two-thirds of which was to be divided "share and share alike," or on a *per capita* basis, among the testator's *children*. (Item no. 4.) The testator provided that should any child of his die before his wife and leave a child or children surviving, said surviving child or children was entitled to receive his or her parent's share of the trust income between them "share and share alike." (Item no. 5.) Items nos. 4 and 5 read together provide for a per capita distribution of trust income among beneficiaries of the same degree of kinship and for a per stirpital distribution among beneficiaries of unequal degrees of kinship.

Upon the death of Jane E. Klauder on November 5, 1927, the trustees were to pay all of the trust income to the testator's children "share and share alike" with the share payable to a deceased child of the testator to be paid to his or her surviving child or children between them "share and share alike." (Item no. 6.) Again, the testator directed distribution of trust income among beneficiaries of the same degree of kinship on a per capita basis and for distribution among beneficiaries of unequal degrees of kinship on a per stirpital basis.

William A. K. Jones (by his agent, First American Bank, N.A.), Sarah A. Bolgiano, Jeanne S. Richardson, and Thomas K. Spencer (the surviving grandchildren of the testator), and Justin Benedict and William I. Simpson Jr. (two of the testator's great-grandchildren)

are the current income beneficiaries. See pages 22-26 of the fifth and final account for the fractional distributions of income among them by right of representation—that is—per stirpes.

The trustees were to hold the trust principal for the respective lives of the testator's children and, in accordance with the Rule Against Perpetuities, for another 20 years after the death the survivor of the testator's children. As stated, Mary M. K. Jones, the decedent's last surviving child, died on November 2, 1973, and the trust terminated 20 years thereafter, on November 2, 1993.

By reason of the trust's termination, the trustees are to convert the trust principal into cash and to distribute one-twentieth of said cash to each bishop or head authority of the Protestant Episcopal Church of Pennsylvania and to the bishop or head authority of the Protestant Episcopal Church of Arkansas (Item no. 7), and the remaining nine-tenths "among my [his] *heirs and descendants* that are then living, *share and share alike.*" (Item no. 8.) (emphasis supplied)[1]

The following represents the 30 "heirs and descendants" of C.W. Klauder who by reason of the trust's termination *might* share in a portion of the trust principal.

Preliminarily, mention should be made that two of the testator's children—George C. Klauder and Estelle Klauder Trites died without issue. Therefore, the potential heirs descend from the Jones, Barnes, and Spencer families.

---

1. No question arises as to the distribution of one-tenth of the trust principal equally as between the two charities as evidenced by the issuance of a charitable gift clearance certificate by the Office of Attorney General. All references hereinafter to trust principal, where unspecified, refer only to the distribution of the remaining nine-tenths.

The living descendants from the line of Mary M. Klauder Jones are as follows: *William K. Jones* (grandson of testator) and his three children, and *Justin Benedict* (great-grandson of testator and surviving son of Estelle K. Jones Benedict, now deceased).

The living descendants from the line of Emma Klauder Barnes are *William I. Simpson Jr.*, (great-grandson of the testator and the surviving son of Jane T. Simpson, now deceased), and his three children.

The living descendants from the line of Jeannette K. Spencer are *Jeanne Spencer Richardson* (granddaughter of testator) and her five children, *Thomas K. Spencer* (grandson of testator) and his eight descendants, and *Sarah A. Bolgiano* (granddaughter of testator) and her five children.

At issue, is whether each of these 30 living descendants takes an equal or per capita share of the nine-tenths of trust principal available for distribution or whether each of the six current income beneficiaries (emphasized hereinabove) takes his or her representative share of the nine-tenths of trust principal to distribute per stirpitally.

The outcome depends on this court's interpretation of Item no. 8 of C.W. Klauder's will wherein he directed his trustees to divide the trust principal to his surviving heirs and descendants share and share alike.

The accountant suggests that the testator intended distribution on a per capita basis. The accountant proposes distribution, in equal shares, among all 30 living heirs and descendants of C.W. Klauder. The accountant relies heavily on the canons of construction and on the holdings in *Hamilton Estate,* 454 Pa. 495, 312 A.2d 373 (1973), the most recent Pennsylvania Supreme Court case sur this issue, and *Neafie Estate,* 74 D.&C.2d 380 (O.C. Phila. 1976) to support its position. For rea-

sons discussed herein, the court is satisfied that both cases are factually distinguishable from the instant case and, assuming arguendo, that this court must resort to the canons of construction, said canons support distribution per stirpes.

Justin Benedict, one of the current income beneficiaries and a principal remainderman, suggests that his great-grandfather intended distribution of the trust principal on a per stirpital basis. Such a distribution would reserve an equal share for each of the testator's grandchildren who survived his or her parent and who is either now living or deceased but survived by children.[2] He has filed objections to support his position and seeks distribution of the trust principal reserved for the testator's heirs and descendants accordingly as follows: one-third to William I. Simpson Jr. (testator's great-grandchild who takes by representation of his deceased mother and testator's granddaughter, Jane T. Simpson), one-sixth to William A. K. Jones (testator's grandson), one-sixth to Justin Benedict by virtue of representation of his deceased mother and testator's granddaughter, Estelle K. Jones Benedict, one-ninth to Jeanne Spencer Richardson (testator's granddaughter), one-ninth to Thomas K. Spencer (testator's grandson), and one-ninth to Sarah A. Bolgiano (testator's granddaughter).

The law provides that the testator's intent is polestar. The testator's intent is ascertained by the language of the instrument in question. Where, as here, Klauder's language, "shall be divided among my heirs and descendants that are then living, share and share alike,"

---

2. The testator was survived by seven grandchildren. Charles Spencer, one of Klauder's surviving grandchildren, has since died. He predeceased his mother, Jeanette Klauder Spencer, and died without issue.

is ambiguous and therefore is susceptible to two diametrically opposed interpretations, the court must review the testator's scheme of distribution, the existing circumstances surrounding the execution of the will, the existing facts, and as a last resort, refer to the canons of construction to decipher the testator's intent. *Hamilton Estate, supra* at 498, 312 A.2d at 374.

This court is satisfied that C.W. Klauder intended a per stirpital distribution of his trust principal upon its termination. Our conclusion rests on the existing case law, the testator's dispositive scheme, and principles of equity and fairness. (See also, discussion on per stirpital distribution in March 16, 1994 adjudication of the Honorable Alfred L. Taxis Jr., for the *Trust Estate of Sarah Hannah Boies Penrose Van Pelt Jr., Settlor,* O.C. no. 83175.)

The three operative terms under Item no. 8 are "heirs," "descendants," and "share and share alike." Alone, each has distinct and uncontroverted meanings. Together, the terms are prima facie ambiguous.

A presumption exists that the term, "heirs" when drafted in an instrument without further explanation is synonomous with a per stirpital distribution. *Hoch's Estate,* 154 Pa. 417, 26 A. 610 (1893); *Baskin's Appeal,* 3 Pa. 304 (1846). This construction parallels the intestacy laws which divide heirs into several classes, according to their degree of relationship to the decedent. *Hamilton Estate, supra* at 499, 312 A.2d at 375. See 20 Pa.C.S. §2514(4). This construction comports with the legal definition of an "heir" as "the person next in the line of succession," that is, the decedent's next of kin. *Baskin's Appeal, supra* at 306. See also, *Hoch's Estate, supra.*

Similarly, a presumption exists that the term "descendants" when unexplained in the context of an in-

strument, permits beneficiaries to take per stirpes, not per capita. *Grimm Estate,* 442 Pa. 127, 144, 275 A.2d 349, 358 (1971), citing, *Mayhew's Estate,* 307 Pa. 84, 91-92, 160 A. 724, 727 (1932).[3]

Conversely, the phrase "share and share alike" or "in equal shares" imports an equality of division and *when unmodified by other expressions* in the will, implies a per capita distribution. See *Hoch's Estate, supra* at 419, 26 A. at 611.

Klauder's use of the phrase "heirs and descendants" doubly supports prima facie a distribution per stirpes. Klauder's direction that his "heirs and descendants" take "share and share alike" poses the following questions: (1) Did C.W. Klauder intend the phrase "heirs and descendants" to be used as words of limitation merely to identify those beneficiaries entitled to share in his trust principal or did he intend said phrase to be interpreted as words of purchase to define both the class of beneficiaries as well as the method of distribution? and (2) Did C.W. Klauder intend the phrase "share and share alike" to mean "equally among heirs of the same class" or "equally among all heirs?"

In 1895, when Klauder executed his will, a presumption existed, and still does today, that distribution follows the laws of intestacy where the testator described his class of beneficiaries as his "heirs" and/or "descen-

---

3. In *Mayhew's Estate, supra,* the Pennsylvania Supreme Court held that the words "descendants" and "issue" without further explanation are interchangeable and require a per stirpital distribution. In Item no. 9 of C.W. Klauder's will, he referred to those entitled to inherit under his estate, as his "children, grand-children and their issue." The testator's use of the word "issue" in Item no. 9, in conjunction with "heirs and descendants" in Item no. 8, further evidenced his intent to distribute both his trust income and principal per stirpitally.

dants" unless the testator clearly manifested a contrary intent. See *Hamilton Estate, supra* at 502, 312 A.2d at 376.

Moreover, it was settled law in 1895, the operative date in question, that the Pennsylvania Supreme Court placed greater emphasis on the testator's use of the word "heirs" when juxtaposed with the term "share and share alike." In other words, the court favored a per stirpital distribution when the distribution identified beneficiaries as "heirs."

For example, in 1846, the Pennsylvania Supreme Court in *Baskin's Estate, supra,* held that the testator's direction that his estate "shall be equally divided between all the heirs" required a per stirpes distribution. In 1893, the Pennsylvania Supreme Court in *Hoch Estate, supra,* affirmed its decision in *Baskin's Estate,* and held that the testatrix's direction that her estate "be divided in equal shares to my legal heirs" required a per stirpital distribution. Accordingly, in 1895, C.W. Klauder directed that his trust principal be divided to his "heirs and descendants" "share and share alike."

Moreover, as recently as 1973, the Pennsylvania Supreme Court, in *Hamilton Estate, supra,* Justice Pomeroy presiding, (1) affirmed the holdings in *Baskin's Appeal, supra* and *Hoch Estate, supra,* (2) distinguished those cases from *Hamilton Estate* at 497, (wherein the testatrix did not make a gift to her "heirs" but rather directed that upon the death of her niece, the trust principal was payable "to *such persons* as would be entitled to share in the distribution of my estate under the intestate laws of the Commonwealth of Pennsylvania, in force at the date of this will, but applied at the death of said Ella Weidle Kerr, *share and share alike.")* and (3) inferred that where the testator describes his class of beneficiaries

as "heirs" and where the language of the will as a whole infers that the testator was thinking of his "heirs" as several classes and thus consistent with the intestacy laws, such language is more susceptible to a per stirpes distribution. *Hamilton Estate, supra* at 503, 312 A.2d at 376-377. (emphasis supplied)

Notwithstanding the settled law, the phrase "share and share alike" as used by Klauder throughout his will denotes equal distributions only as among beneficiaries of the same generation not across generations. The following schematic best illustrates our position.

"*Trust Income Distributions:*

"Item no. 4: To my *children ... share and share alike.*

"Item nos. 5-6: To my *child or children of a deceased child ...* to take the share of their deceased parent *between them share and share alike.*

"*Trust Principal Distributions:*

"Item no. 8: Divided among my *heirs and descendants* that are living *share and share alike.*"

Moreover, the testator used the phrase "share and share alike" throughout his will in conjunction with per stirpital distributions of trust income. Equal distributions of income applied only to beneficiaries of the same degree of kinship.

In this context, Klauder's testamentary scheme of distribution further mandates distribution of his trust principal per stirpes.

Logic dictates and case law supports the principle that the method of distribution of trust principal follows the method of distribution of trust income (especially where beneficiaries are of the same class) unless the testator manifestly expresses a contrary intent. *Grimm*

*Estate, supra; Wanamaker Estate,* 399 Pa. 274, 281, 159 A.2d 201, 204 (1960).

This trust has been administered for nearly 90 years. During this time, trust income has been distributed consistently on a per stirpital basis in accordance with Item nos. 4-6 of C.W. Klauder's will and in accordance with this court's holding in 1983 that more remote issue than grandchildren of the testator could receive trust income distributions on a per stirpital basis.

By Item no. 4, Klauder directed that trust income be divided *"share and share alike"* only among his *children.* By Item nos. 5 and 6, Klauder directed that trust income distributed to a *descendant* of his by reason of the death of one or more of his children, must pass *per stirpitally.* It follows that by Item no. 8, Klauder intended the phrase "share and share alike" to mean that heirs and descendants of the same degree of kinship receive trust principal equally, while more remote heirs and descendants of unequal degrees of kinship take per stirpitally. See *Burleigh Estate,* 405 Pa. 373, 379, 175 A.2d 838, 841 (1961) (wherein the court held that the word, " 'equally' means *equally among heirs of the same class,* but the issue of a deceased member of that class would not take equally with the members of the first class, but would take per stirpes.") (emphasis in original)

During the past 30 years of this trust's existence, trust income has been administered and distributed predominantly for the benefit of the testator's four living grandchildren and two of the testator's great-grandchildren by representation of their deceased parents, the same exclusive group of beneficiaries who will now succeed to a share of the trust principal per stirpitally.

A per capita distribution would not only be a radical departure from the testator's intent as carried out for

nearly 90 years but would favor more remote issue who have parents living over both living grandchildren of the testator and deceased grandchildren who left issue surviving. A per capita distribution would permit great-great-grandchildren to participate equally with surviving great-grandchildren from the same family line. A per capita distribution would permit great-grandchildren to participate equally with grandchildren from the same family line. More dramatically, a per capita distribution would permit grandchildren from one family line to share equally with great and great-great-grandchildren from other family lines without any regard to representation.

Above all, the testator's dispositive scheme evidences his intent to favor his next of kin over more remote relatives. It is highly improbable and can scarcely be imagined that Klauder intended to favor remote descendants over living grandchildren, particularly where said persons were born long after the execution of his will and his death.

Financially, a shift from a per stirpital distribution of income to a per capita distribution of principal would drastically reduce the principal share of each of the current income beneficiaries. The objector, along with William A. K. Jones, each of whom was receiving a one-sixth income distribution per stirpitally on November 2, 1993—the date the trust terminated—would receive a one-thirtieth per capita share of the trust principal the following day. Similarly, William I. Simpson Jr.'s share would be reduced from one-third to one-thirtieth and each of the shares of Jeannette K. Spencer's three surviving children would be reduced from one-ninth to one-thirtieth.

Distribution of income per stirpes and principal per capita is the exception, not the norm. *Grimm Estate,*

*supra.* If Klauder intended such a dramatic shift in distribution, he should have manifestly expressed his desire to do so. Otherwise, this court will follow the long standing principle that trust principal follows trust income. See *Mayhew's Estate, supra.*

Principles of equity and fairness guide our decision to direct distribution of trust principal per stirpes.

Distribution of trust principal on a per stirpital basis will ensure that each family branch of the decedent's children who was survived by issue (that is—Mary M. Klauder Jones', Emma Klauder Barnes' and Jeannette Klauder Spencer's descendants) will receive an equal share of the trust principal for further distribution which, in turn, will be distributed to the descendants of each family line by representation.

To distribute the principal on a per capita basis would disproportionately favor Jeannette Klauder Spencer's family line by allotting 21 equal shares to her descendants. Conversely, only four equal shares would pass to Emma Klauder Barnes' family line and only five equal shares would pass to Mary M. Klauder Jones' descendants.

As stated, the accountant relies heavily on the holdings in *Hamilton Estate, supra,* and *Neafie Estate, supra* in favor of a per capita distribution.

In *Neafie Estate,* Judge Klein grappled with language similar to *Klauder Estate* and came to the opposite conclusion of this court. While we respect Judge Klein's opinion, this court is not bound by his decision. Moreover, *Neafie* is easily distinguishable from the instant case. In *Neafie,* the gift to the descendants of the testator's daughter, his sister, and his brother, was one that crossed generations. In *Klauder,* the gift is one to heirs of the same class. In *Neafie,* the court was unable to ascertain the testator's intent from the tes-

tamentary scheme of distribution and resorted to the canons of construction. In *Klauder,* this court need not review the canons of construction. The testator's scheme of distribution favors a per stirpital distribution of the trust principal.

*Hamilton Estate* is similarly distinguishable. The *Hamilton* court interpreted language which referred to a class of principal beneficiaries as "such persons," not as "heirs and descendants." Hence, the *Hamilton* court reaffirmed the holdings in *Baskin's Appeal* and *Hoch Estate* but factually distinguished these cases.

In *Hamilton,* similar to *Neafie Estate,* Justice Pomeroy was forced to rely on the following four canons of construction as no testamentary scheme of distribution nor existing facts nor existing circumstances surrounding the execution of Hamilton's will illustrated the testatrix's intent.

"[Canon no. 1] There is a generally adhered to principle that, when the beneficiaries are of equal degrees of kinship, the estate passes per capita, but when they are of different degrees of kinship, the estate passes per stirpes. This is a corollary to an older presumption that the distribution of an estate follows the laws of intestacy unless a contrary intent is clearly expressed....

"[Canon no. 2 There is a] presumption that the words 'share and share alike' or their equivalent, require each beneficiary to receive an equal share....

"[Canon no. 3] There is [the] canon which disfavors an interpretation rendering language in the will nugatory....

"[Canon no. 4 There is] the canon which teaches that words which appear repeatedly in a will are used con-

sistently throughout." *Hamilton Estate, supra* at 502-504, 312 A.2d at 376-377.

The *Hamilton* court found no apparent scheme nor pattern throughout Edith Hamilton's will to support a per stirpital distribution. The *Hamilton* court found no indication of Edith Hamilton's intent from the circumstances surrounding the making of her will. The *Hamilton* court held that none of the aforementioned canons controlled the case as either the canons counterbalanced one another or could be used to support the positions of either of the opposing parties.

Assuming arguendo, we applied these canons of construction in *Klauder,* said canons would support the objector's per stirpital position.

The Klauder heirs are of unequal degrees of kinship. The presumption arises that the estate assets pass per stirpes in accordance with the intestacy laws absent Klauder's express intent to the contrary. (Canon no. 1.)

This court's reliance on Klauder's description of his trust principal beneficiaries as his "heirs and descendants" in no way renders his direction that said beneficiaries take "share and share alike" nugatory. Based on Klauder's testamentary scheme, "share and share alike" means "equally among heirs of the same class." (Canons nos. 2 and 3.) Klauder used the term "heirs" as a word of limitation, not as a word of purchase. "Heirs" is not used to describe the beneficiaries, but to limit or define an estate which these beneficiaries take—an estate of inheritance. *Glenn v. Stewart,* 265 Pa. 208, 108 A. 599 (1919).

The *Hamilton* court implied that it would have been persuaded to direct distribution of the trust principal per stirpitally had the testatrix evidenced a per stirpital

scheme throughout her will. "Share and share alike" is used consistently throughout C.W. Klauder's will. As to income distribution, the phrase, "share and share alike" is coupled with a clear statement that children and more remote issue take only a deceased parent's share. Accordingly, Klauder's direction that his "heirs and descendants" take principal "share and share alike" implies a per stirpital distribution. (Canon no. 4.) See supplemental objections of Justin Benedict dated July 29, 1994.

This court is bound by the well-established law of the Pennsylvania Supreme Court and we believe that the law favors our decision to make distribution. of trust principal per stirpes, where, as here, this court is convinced that C.W. Klauder evidenced his intent to do so.

For the foregoing reasons, this court sustains the objections and supplemental objections filed by Justin Benedict to the fifth and final account (with the exception of Benedict's objections sur Mellon Bank's legal fees) and subject to distributions heretofore properly made and to distributions to be paid to the accountant as approved herein, the court hereby awards the net ascertained balances of principal and income in accordance with the views expressed herein as follows:

*Income*

One-third to William I. Simpson Jr.

One-sixth to Justin Benedict

One-sixth to William K. Jones

One-ninth to Jeanne Spencer Richardson

One-ninth to Thomas K. Spencer

One-Ninth to Sarah A. Bolgiano

## Principal

One-tenth of the trust principal as follows:

One-twentieth to the bishop or head authority of the Episcopal Diocese of Arkansas for the uses set forth under C.W. Klauder's will

One-twentieth to the bishop or head authority of the Episcopal Diocese of Pennsylvania for the uses set forth under C.W. Klauder's will

Nine-tenths of the trust principal as follows:

Three-tenths to William I. Simpson Jr.

Three-twentieths to Justin Benedict

Three-twentieths to William A. K. Jones

One-tenth to Jeanne Spencer Richardson

One-tenth to Thomas K. Spencer

One-tenth to Sarah A. Bolgiano

Power and authority are given the accountant to make the necessary transfers and assignments of the unconverted investment securities herein awarded in kind.

The fifth and final account is confirmed, and it is hereby ordered and decreed that Mellon Bank, N.A., corporate trustee, as aforesaid, forthwith pay the distributions herein awarded.

And now, December 2, 1994, this adjudication is confirmed nisi.

Exceptions to this decree must be filed within 10 days of the date herein at which time this decree will become final.